6935

SEABOARD AIR LINE RAILWAY CO. v. TOWN OF FAIRFAX.

STREETS—ADVERSE USE—ACQUIESCENCE.—Where a deed is made to a construction company engaged in building a railroad conveying to it a tract of land upon condition that it lay out on it a town, and convey certain lots to grantors, but first reserving for the railroad company certain portions of the tract particularly described, and where the deed from the construction company to the grantors for said lots particularly recites the said provision in the original deed as to the reservation for the railroad company, the railroad company is not bound by a mistake in the plat of the engineer of the construction company, in which he represented as a part of a street of the town a part of the land reserved to the railroad company, both deeds and plat being duly recorded. Nor is it bound by the acts of the construction company in selling lots bounding on said street. Ten years' use of the street as laid out on the plat by the public as a street does not affect the right of the railroad company in absence of proof of acquiescence.

Before MEMMINGER, J., Barnwell, December, 1907. Affirmed.

Action by Seaboard Air Line Railway against the town of Fairfax, J. F. Lightsey, intendant, and W. E. Harter, J. J.

Harter, O. J. Youmans and J. J. Knopf, wardens.  The following is the Circuit decree:

"I have carefully examined this record at my leisure after the adjournment of court, in the light of the very earnest arguments had thereon during the evening, and with grave misgivings as to the abstract justice thereof, I am constrained to hold that as to the defendants in this cause the case for the plaintiff is established by the evidence and the prayer of plaintiff's complaint must be granted.

"The plat relied upon by defendants was not made by the plaintiff railroad company, and in the conveyances through which the railroad company claims there is the distinct reservation, notwithstanding the plat, to it of the strip of land in dispute.

"The town of Fairfax has not successfully established adverse use nor dedication; on the contrary, the deeds through which the railroad claims were distinct notice to the town and those purchasing according to the plat that, by actual measurement, there could be no Sumter avenue between these lots and the railroad reservation, leaving to the railroad the strip in question.  It seems that the engineer who made the plat for the construction company made a mistake in his calculations and placed the front of the lots too near the railroad by sixty feet the width claimed for Sumter avenue, as it is now in order to get Sumter avenue in front of the lots sixty feet, that sixty feet would have to come off of the strip in question reserved to the railroad.  The railroad was not bound by the plat, no doubt it is bound by acquiescence in the use by the persons who have actually used the portion of the strip for ingress and egress to their property; and I was at first impressed with the view that this acquiescence might inure to the defendants, but upon reflection do not think so.

"The defense has failed.  The defendants must restore to plaintiff the sum of twenty dollars, exacted as a bond from its bridge foreman, and the temporary injunction heretofore

issued, signed by Judge Gary June 25, 1906, is made permanent. And it is so ordered."

From this decree, defendants appeal.

*Messrs. J. O. Patterson* and *B. T. Rice,* for appellants, cite: *The railroad company is now estopped from denying the plat made by the construction company, its grantor:* 57 S. C., 279; 90 Am. Dec., 220; 6 N. E. R., 866; 5 Ency., 396, 403, 407. *Dedication is presumed from use and acquiescence by the owner:* 12 Da., 239; 19 N. Y., 256. *Plat and sales with reference thereto by grantors gives plat great force and effect:* 7 Rich. L., 451; 9 How., 10. *Former owners cannot revoke a dedication:* 5 Ency., 410; 5 At. R., 641; 4 Fed. R., 461; 61 Am. Dec., 221.

*Messrs. Lyles* and *McMahon* and *Robert Aldrich,* contra. No citations.

July 6, 1908. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. This is an action by the plaintiff, wherein an injunction is sought to prevent interference by the town of Fairfax, of Barnwell county, and State of South Carolina, of what is known as Sumter avenue of said town so far as the sixty feet in said avenue is set up, of the grant of land on the 210 feet in width and 2,100 feet in depth, from W. J. and J. F. Sanders unto the Savannah Construction Company for the South Bound Railroad, said grant being set up in the agreement entered into by said W. J. and J. F. Sanders on the 30th day of December, 1890, and recorded in the office of R. M. C. for Barnwell county in Book 6B, page 346.

The plaintiff, the Seaboard Air Line Railway Company, obtained a preliminary injunction from his Honor, Ernest Gary, on the 25th day of June, 1906, and a rule by which the defendants were required to show cause on the 6th day of

July, 1906, why the injunction should not be made permanent.

Cause was shown by said defendants; a hearing took place before his Honor, Judge R. W. Memminger, upon maps and deeds and testimony by both parties, and on the 21st day of December, 1907, Judge Memminger filed his decree, in which he held that the plaintiff's rights were fully protected and that the defendants must yield their possession of the said sixty feet of said Sumter avenue over to the plaintiff, ceasing all manner of interference with the plaintiff's possession of said sixty feet of land and returning the twenty dollars in money exacted of their agent.

From this decree of his Honor, Judge Memminger, the defendants have appealed to this Court upon six grounds. It becomes necessary, therefore, that we should examine these grounds in their order.

1. "Because his Honor erred, in holding that the plat relied upon by the defendants was not made by the plaintiff railway company; whereas, his Honor should have held, that the plat relied upon by the defendants-appellants was made by the Savannah Construction Company and by the grantors of the plaintiff-respondent, and with their full knowledge and acquaintance of the said plat; the same being of record, and being a part and parcel of respondent's deed; and should have held that the respondent fully concurred in the adverse use of the streets laid out on said plat."

It is proper that we should reproduce, at this juncture, the complaint referred to, which is as follows:

"The complaint of the above named plaintiff respectfully shows unto the Court:

1. "That it is a corporation duly created and organized under the laws of the States of Virginia and North Carolina, under the corporate name and style of Seaboard Air Line Railway Company, and operates a line of railway through the State of South Carolina and the County of Barnwell on its line of road towards Savannah, in the State of Georgia, in doing which it passes through the town of Fairfax, in said

27—80

county, and by its charter is authorized to hold and enjoy property, contract and be contracted with, sue and be sued as a natural person would be under the law.

2. "That the town of Fairfax is a municipal incorporation existing under the laws of the State, with all the rights, powers and privileges granted by and subject to all the limitations and provisions contained in an Act entitled an Act to provide for and regulate the incorporation of towns of less than one thousand inhabitants in this State, approved 23d December, A. D. 1886.

3. "That the South Bound Railroad Company is a corporation duly created and organized under the laws of the States of South Carolina and Georgia, and was the owner of a railroad constructed and operated between Camden, in the State of South Carolina, which is its northern terminus, and extending in a southerly direction to the city of Savannah, in the State of Georgia, in doing which it passed through the city of Columbia and the towns of Cayce, Denmark and Fairfax, in South Carolina.

4. "The Savannah Construction Company is a corporation duly created and organized under the State of Georgia, and by its charter is authorized to hold and enjoy property, real and personal, sue and be sued, contract and be contracted with as are natural persons.

5. "That on the 30th day of December, A. D. 1890, W. J. and J. F. Sanders, citizens of the County of Barnwell and landowners in the vicinity of Fairfax, then known by the name of Campbellton, entered into a contract of sale with the said Savannah Construction Company and by their mutual agreement, under their hands and seals, covenanted to sell and convey and did convey to the said Savannah Construction Company a tract of land two hundred and twelve acres in and about said town of Fairfax, therein called Campbellton in said deed, particularly described upon the terms and conditions therein set forth, and among other things, it is particularly provided that 'said tract of land shall be hereafter laid out by the said Savannah Construction Company,

or its engineer, into a town, with streets, lanes, lots and blocks for building purposes in such shapes, sizes and dimensions as the said Savannah Construction Company, or its engineer, may think best suited for a town or city, and with parks and squares, if said company shall think best; a right of way one hundred feet wide through said tract of land for said South Bound Railroad Company, and also a tract of land twenty-one hundred (2,100) feet in length and two hundred and ten (210) feet in width, beginning at the crossing of the Port Royal and Augusta Railroad by the South Bound Railroad and running parallel to and on the west side of the South Bound Railroad, for the use of the said South Bound Railroad Company, to be first reserved; and after said tract of land is so laid off as a town into blocks and lots with streets and lanes and such parks and squares if any, as may be thought best, said right of way one hundred feet wide and said strip and tract of land two hundred and ten (210) feet wide by twenty-one hundred (2,100) feet long being first reserved for the uses and purposes of said South Bound Railroad Company, every alternate lot or block shall be and become the property in fee simple of the said Savannah Construction Company, and the remaining alternate lots or blocks shall be and become the property in fee simple of the said W. J. and J. F. Sanders; and after said allotment, which is to be done in such way as to be fair and equitable to both parties, the said Savannah Construction Company and the said Sanders shall sign such an instrument or deed as will clearly show the lots and blocks belonging to said Savannah Construction Company and those belonging to the said W. J. and J. F. Sanders.'

"All of which will more particularly and at large appear by reference to said agreement, a copy of which is hereto attached as a part of this complaint, and is recorded in Book 6B, p. 346, office of the clerk of the court for said county.

6. "That in pursuance of and compliance with the hereinbefore mentioned contract of sale, on the 14th day of November, A. D. 1891, the said William J. Sanders and

Elliott L. Sanders, as executors of the will of James F.
Sanders, deceased, and by virtue of the power therein con-
tained, parties of the first part, and the said Savannah Con-
struction Company, party of the second part, executed their
certain indenture in writing, under their hands and seals,
wherein, among other things, it is recited and provided as
follows:

" 'Whereas, on the 30th day of December, A. D. 1890,
the said William J. Sanders, and the said James F. Sanders,
who was then in life, entered into an indenture with the said
Savannah Construction Company, wherein and whereby the
said William J. Sanders, and James F. Sanders for and in
consideration of the location and building of the South
Bound Railroad by the said Savannah Construction Com-
pany, (which has the contract for locating and building the
said South Bound Railroad), so as to cross the Port Royal
and Augusta Railroad at or near the depot of the said Port
Royal and Augusta Railroad, in the town or station of
Campbellton, in said County of Barnwell, in the State of
South Carolina, bargained and conveyed to the said Savan-
nah Construction Company a tract or parcel of land, contain-
ing two hundred and twelve (212) acres, more or less, situate,
lying and being in the County of Barnwell, in the State of
South Carolina, and in and about said town of Campbellton,
and fully described in said indenture, which is duly recorded
in the proper record book for such instruments in the County
of Barnwell; and whereas, the said Savannah Construction
Company has duly and fully complied with all of its obliga-
tions under said indenture and has laid out the said tract of
land into a town, with streets, lanes, lots and blocks for
building purposes, as provided for in the said indenture,
which said town has been named Fairfax; and whereas, it
was provided in and by said indenture, that after reserving
a right of way one hundred (100) feet wide and a strip two
hundred and ten (210) feet wide by twenty-one hundred
feet long for the uses and purposes of the said South Bound
Railroad Company, every alternate lot or block in said tract

of land so laid out as a town should be and become the property in fee simple of the Savannah Construction Company, and the remaining alternate blocks or lots should be and become the property in fee simple of the said William J. Sanders and James F. Sanders, and that after the allotment, which it was provided should be done in such a way as to be fair and equitable to both parties, the said Savannah Construction Company and the said William J. Sanders and James F. Sanders should sign such an instrument or deed as would clearly show the lots or blocks belonging to the said Savannah Construction Company and those belonging to the said William J. Sanders and James F. Sanders; and whereas, after the conditions of said indenture of December 30, 1890, had been fully complied with on the part of the Savannah Construction Company, and the said town laid out as required, but before any allotment or division thereof, and before the signing of any instrument or deed showing which lots or blocks had been allotted to the parties, the said James F. Sanders departed this life, leaving his last will and testament, which has been duly probated in the County of Barnwell, in the State of South Carolina, wherein and whereby the said James F. Sanders named William J. Sanders and Elliott L. Sanders as the executors of his said last will and conferred upon them certain powers set forth in said will, and of which will they have duly qualified as executors; and whereas, under said indenture of December 30, 1890, the parties thereto now are entitled to such an instrument in writing as will show which of said lots and blocks belong to the said William J. Sanders and to the estate of James F. Sanders jointly, and which of them belong to the Savannah Construction Company; and whereas, the said William J. Sanders, in his own behalf, and the said William J. Sanders and Elliott L. Sanders, as executors of the last will of James F. Sanders, and the Savannah Construction Company have this day met and agreed upon a division and allotment of said property described in said deed of December 30, 1890:

" 'Now, therefore, in consideration of the premises and the sum of five dollars, to them in hand paid by the Savannah Construction Company, at and before the signing, sealing and delivery of these presents, the receipt whereof is hereby acknowledged, the said William J. Sanders, in his own behalf, and the said William J. Sanders and Elliott L. Sanders, as executors of the last will and testament of James F. Sanders, in pursuance of the terms of the said indenture of December 30, 1890, and in accordance with the said allotment and division between the parties hereto, have granted, bargained, sold and conveyed and by these presents do grant, bargain, sell and convey, unto the said Savannah Construction Company, its successors and assigns, all those certain blocks and lots of land comprised in said tract of land, and now situate and being in the now town of Fairfax, in said County of Barnwell, in the State of South Carolina, and known on a plan of the same (a copy of which plan is hereto annexed and made a part of this deed) as blocks Nos. * * *'

"And in the same indenture, the Savannah Construction Company in apt and proper words conveyed to the said William J. Sanders, in his own right, and unto the said William J. Sanders and Elliott L. Sanders, as executors of the will of James F. Sanders, deceased, the remaining lots and blocks of land in the said town of Fairfax belonging to them under said contract and agreement, and the said Savannah Construction Company and the said William J. Sanders, in his own right, and the said William J. Sanders and Elliott L. Sanders, as executors of the will of the said James F. Sanders, deceased, and by virtue of the power therein contained, conveyed to the said South Bound Railroad Company the tract of land therein described, in the words and figures following, that is to say: 'And it is further understood and agreed between the parties hereto, that a right of way one hundred feet wide through said tract of land, and also a tract of land twenty-one hundred (2,100) feet in length and two hundred (200) feet in width as laid down upon said way, are hereby granted and conveyed unto the said South

Bound Railroad Company, for the use of the said South Bound Railroad Company, its successors and assigns, forever.' A copy of said deed is hereto annexed as a part of this complaint, which said deed of conveyance, with accompanying plat, is recorded in Book 6B, p. 475, office of the clerk of the court for said county.

7. "That on the       day of      , A. D. 1901, the said Seaboard Air Line Railway and the said South Bound Railroad Company, together with other railway and railroad companies therein named, to wit: The Raleigh and Gaston Railroad Company, the Raleigh and Augusta Air Line Railroad Company, the Carolina Central Railroad Company, the Georgia, Carolina and Northern Railway Company, and the Seaboard Air Line Belt Railroad Company, the Palmetto Railway Company, the Chesterfield and Kershaw Railroad Company, made, executed and delivered articles of agreement of merger and consolidation whereby the said several railroad and railway companies became united, merged and consolidated, to be thereafter known, owned and controlled as and by one railroad company, and the name of the said company so formed by the merger and consolidation and union of the said railroad companies is the Seaboard Air Line Railway. Whereby the capital stock, franchises, railroads, estates and properties, real and personal, and mixed, of the said several railroad companies were united, merged and consolidated and were thereafter to be known, owned and controlled by the said Seaboard Air Line Railway, the plaintiff herein. That said deed or articles of agreement were signed by the said several railroad companies named by their proper authorized officers, respectively, and their respective corporate seals were affixed thereto and duly delivered and were filed in the office of the Secretary of State of South Carolina, on the 7th day of November, A. D. 1901, a certified copy of which will be produced at any time it may be required, and reference thereto is hereby craved as often as may be necessary.

8. "That immediately after the conveyance of the said right of way one hundred (100) feet in width and the said tract of land two hundred and ten (210) feet in width by twenty-one hundred (2,100) feet in length to the said South Bound Railroad Company, to wit, on the 14th day of November, A. D. 1891, the said South Bound Railroad Company entered into possession therof and used, occupied and held the same until the consolidation of the said South Bound Railroad Company with the other railroad companies aforesaid, under the new name of the Seaboard Air Line Railway, when the last named company, the plaintiff herein, came into possession and ownership thereof, and is in the occupation and ownership thereof until the present time.

9. "That on or about the 30th day of August, 1905, the plaintiff herein, in the exercise of its right as owner of the said tract of land described, two hundred and ten (210) feet wide by twenty-one hundred (2,100) feet in length, attempted to do certain work upon the same in the prosecution of its business as a railway company, when the defendants herein, the said town of Fairfax, and the said J. F. Lightsey, intendant, and the said W. E. Harter, J. J. Harter, O. J. Youmans and J. J. Knopf, wardens, composing the town council of Fairfax aforesaid, in a violent and intolerant manner, and with a strong hand and show of force, prevented the plaintiff from using and enjoying said land, arrested its agents, servants and laborers and confined its bridge foreman to the guardhouse of said town for a long space of time and until his release was procured by the plaintiff depositing with the said defendants the sum of twenty dollars as a bail to ensure his attendance for trial at a future time upon the charge of obstructing a street of the said town, which said charge is, as plaintiff is informed, advised and believes, wholly pretensive and without foundation or justification in law. That the plaintiff has made other attempts to use its said land in the way of enjoying and carrying on its business as a railway company, but upon each and every occasion the said defendants have repeated its forcible obstruction

and prevention of the plaintiff in the exercise of its rights, have themselves committed trespasses upon said land by digging up the soil, removing the earth and other materials and have laid off and graded a street through said land without any legal right so to do, and in open defiance of law and right, and declare that they will continue to so trespass and obstruct the plaintiff in the enjoyment of its property rights, and will arrest and imprison its agents, servants and laborers as often as they attempt to use the said land for railroad purposes.

10. "That the plaintiff is a railway company operating one of the principal railways through said State, that it owes duties to the public as well as to its owners, and it is severely hindered and injured in being thus forcibly hindered from using its said land, and cannot secure relief and adequate remedy in the premises without the interposition of an injunction.

"Wherefore, the plaintiff demands judgment, as follows:

"That the said defendants above named be perpetually restrained and enjoined from further interference with the plaintiff in the use and enjoyment of its said land hereinabove described, and from in any way interfering with, incommoding, arresting or obstructing the agents, servants and employees of the plaintiff in the discharge and performance of their duties in reference to said land. That the said defendants be decreed to return to the plaintiff the said sum of twenty dollars so unlawfully exacted and unjustly withheld, for the costs of this action, and for such other and further relief as may seem just."

Judge Gary issued on this complaint the following rule:

"On hearing the verified complaint herein, and on motion of Robert Aldrich, Esq., attorney for the plaintiff, it is ordered:

"That the said defendants above named do show cause before me at Barnwell, on Friday, the sixth day of July next, at the courthouse, at 10 o'clock a. m., of that day, why the temporary injunction or restraining order herein granted

shall not be continued until the final determination of this action, and that meanwhile the said defendants, Fairfax, and J. F. Lightsey, intendant, and W. E. Harter, J. J. Harter, O. J. Youmans and J. J. Knopf, wardens, composing the town council of said town of Fairfax, are enjoined and restrained from committing any of the acts mentioned and described in the said complaint herein, and more especially from any and all interference with the plaintiff in the use and enjoyment of the land described in the complaint, and from in any way interfering with, incommoding, arresting or obstructing the agents, servants and employees of the plaintiff in the discharge and performance of their duties in reference to said land. Let a copy of the complaint be served with this order. (Signed) Ernest Gary, Presiding Judge.

"At Chambers, Aiken, S. C., 25th June, 1906."

"The defendants above named, by their attorneys, J. O. Patterson & Son, answering the complaint herein, allege:

1. "That they admit the allegations contained in the 1, 2, 3, 4, 5 and 6 and 7 paragraphs of said complaint.

2. "That they deny the allegations contained in the eighth paragraph of said complaint, and allege that neither the plaintiff, its grantors, predecessors, agents or servants have ever been in possession of that portion of the land described in said paragraph known as Sumter avenue, situate and located west of the South Bound Railroad.

3. "That the defendants deny all of the allegations contained in the ninth paragraph of said complaint, except as is hereafter admitted.

"The defendants herein, further answering said complaint, allege: That a portion of the land described in the eighth paragraph of said complaint, and claimed by the plaintiff is a public street of the said town of Fairfax, as is shown upon the map of the said town, made by the Savannah Construction Company and approved by the chief engineer, the same having been made under articles of agreement between the said Savannah Construction Company and W. J. and J. F.

Sanders, and that the public have continuously and uninterruptedly used said Sumter avenue as a public highway ever since the said town was surveyed and mapped by the said Savannah Construction Company in the year A. D. 1890; and that the plaintiff, its grantors, predecessors, agents and servants have always recognized the rights of the public to use said Sumter avenue as a public highway, and that the plaintiff has no right of title to that portion of the land described in said eighth paragraph of the complaint, known as Sumter avenue, as set forth upon the said plat of Fairfax, made by the Savannah Construction Company, recorded in Book 6B, page 483; and that the defendants, in the exercise of their legal right and authority, as intendant and wardens of the town of Fairfax, prohibited the plaintiff, its agent and servants from trespassing upon, blocking and obstructing said street of the town of Fairfax, known as Sumter avenue, and gave due and legal notice to the agent, servants and laborers of said railroad company of their rights, and objected to and prohibited them from obstructing said street, and that after said notice the said laborers unlawfully persisted in blocking and obstructing said street, and the defendants were forced to arrest one of their number upon the charge of violating the ordinance of the town in obstructing a public street of said town, and that said arrest was made in a peaceable and orderly manner.

4. "That said Sumter avenue herein referred to and claimed by the defendant to be a public thoroughfare, was laid off by the civil engineer of the Savannah Construction Company, and represented on the plat of the town of Fairfax made by said civil engineer and extended across the town of Fairfax, running east and west and parallel with the South Bound Railroad, and is the boundary line of the land claimed by the plaintiff, and is the western boundary line of the lots or blocks 46, 47, 48, 49, 50, 51 and 52, and has always been so recognized by the plaintiff; and was so held out and represented by the plaintiff on the map made by it of the said town and to the public generally, and to the purchasers of

the lots adjoining and binding upon said Sumter avenue, adjacent to the plaintiff's land.

"As and for a second defense, these defendants allege:

"That neither the plaintiff, its grantors, predecessors, agents or servants have been in possession of any part or portion of the said land known as Sumter avenue within ten years last past before the commencement of this action, and that the defendant, the town of Fairfax, has been in possession, using and maintaining the said strip of land continuously, without objection or molestation, for more than ten years prior to the commencement of this action, claiming the same under the agreement and plat of the town of Fairfax, referred to in said complaint herein.

"As and for a third defense, these defendants allege that the town of Fairfax has been in continuous possession, using and maintaining Sumter avenue as a street of said town, extending across said town from north to south along the lands and through the lands claimed by the plaintiff in eighth paragraph of said complaint, and that the public have used the same as a public highway for more than ten years last past, prior to the commencement of this action.

"Wherefore, the defendants pray that the injunction heretofore granted in this cause be vacated and set aside, and that the complaint be dismissed, with costs."

Sworn to by J. F. Lightsey, intendant, and properly probated.

The decree of his Honor, Judge R. W. Memminger, sustained the temporary injunction ordered by Judge Gary. Let his decree be reported.

We find that the conveyance executed by the Sanders and the Savannah Construction Company recognizes most distinctly and emphatically that there shall be laid off of the 212 acres, first, a right of way one hundred feet wide, and then a plat of land 2,100 feet in length and 210 feet in width, the latter being on the west side of the railroad, and that the deed executed afterwards by the two Sanders and the Savannah Construction Company when they undertake to divide

the land comprising the two hundred and twelve acres, recognized and reiterated the fact that the right of way 100 feet wide and the lot of land 2,100 feet in length and 210 feet in which shall be first laid off before a division is made of the land into lots; again, the map, which is recorded in Barnwell county in connection with the deed of December 30, 1890, distinctly represents that Sumter avenue is not to take any part of the sixty feet now claimed by the defendants, so that not only in the deed itself is there a distinct recognition of the railroad ownership of the strip of land in question, but the map itself recognizes the railroad's right fully.

Therefore, when Judge Memminger held that the plat relied upon by the defendants was not made by the plaintiff railway company, he but recognized a clearly established fact; he knew that the plaintiff railway was not a party to any agreement looking to the dividing up of the lots of land between Sanders and the Savannah Construction Company; the plaintiff was not a party to any subdivision of the 212 acres of land; it was running and preparing to run a railroad while the Sanders brothers and the Savannah Construction Company were for themselves engaged in a plan to make money by the sale of lands. So the Circuit Judge committed no error as herein pointed out. This exception is overruled.

2. "Because his Honor erred in holding that the defendants-appellants have not successfully established adverse use and dedication of said street by the town and public generally; whereas, his Honor should have held that the defendants-appellants and all other persons had used all of said street and land as laid out on said plat openly and notoriously for more than ten years, and his Honor should have so held."

We do not see any error in the holding by his Honor that the appellants have not successfully established adverse use and dedication by the town and public generally; the purpose of the grantors was to endow the plaintiff railway company

with land sufficient for its purposes as a railway, and just as might have been expected, after a few years occupancy of the land, this railway plaintiff found it necessary to appropriate this identical piece of land to railroad purposes by transferring to the same the two sections which had formerly been exercised from a more distant point from Fairfax, but which the best interest of the railroad required should be used at Fairfax on this very tract of land. There was no dedication of the strip of land or any part thereof to the city or citizens of Fairfax; and as is well said in 13 Cyc., page 476: "The ordinary rules of evidence in general apply to the proof of dedication. Dedications being an exceptional and a peculiar mode of passing title to interest in land, the proof must usually be strict, cogent and convincing and the acts proved must be inconsistent with any construction other than that of a dedication." See, also, 13 Cyc., p. 442, where it is held as follows: "It is a necessary conclusion that no one except the owner of an unlimited estate in fee can make a dedication of land." Again, at page 475 of same volume, it is said: "The burden of proof to establish a dedication is upon the parties setting it up." The town of Fairfax was not laid out until 1891, and for years there was no claim by the said town of such avenue. Certainly no twenty years' use of said Sumter avenue, nor claim to the same, has been established. This exception is overruled.

3. "Because his Honor erred in holding that there had been no dedication of the street or strip of land, laid off on said plat as Sumter avenue; whereas, his Honor should have held that the plaintiff-respondent has dedicated said street or strip of land, known as Sumter avenue, to said town of Fairfax and the general public."

The remarks made in disposing of the second exception apply equally to this exception, and it is dismissed without further notice.

4. "Because his Honor erred in holding that there could be no Sumter avenue between these lots and the railroad reservation; whereas, his Honor should have held that the

plaintiff-respondent had distinct notice of the creation of the street, known as Sumter avenue, and its adverse use and claim by the town, and that said respondent concurred and acquiesced in same."

We are at a loss to understand what testimony or facts could be relied upon by the defendants to establish this proposition. For certainly there is no testimony which shows that the plaintiff-respondent had any notice of a street, known as Sumter avenue, and its adverse use and claim by the town. The testimony shows that the plaintiff-respondent was careful in allowing parties to use a part of said strip of land, usually giving a written lease. This exception is overruled.

5. "Because his Honor erred in holding that the engineer of the Construction Company made a mistake and placed the front of the lots near the railroad by sixty feet, the width claimed for Sumter avenue; whereas, his Honor should have held that the plaintiff-respondent knew of said error and the creation of the street, known as Sumter avenue, at the time of their purchase of said land, and had full notice of same, and therefore are estopped."

There was obliged to have been an error made by the engineer of the construction company, for he laid out on his plan of the town an appropriation of a part of the plaintiff's land for Sumter avenue; he could not do this except by a pure mistake on his part. For the grantors were so explicit in providing for this strip of land for the railroad that it could not have been made except by an error on the part of the engineer. Nor do we see how purchasers of any portion of the land from the Savannah Construction Company could have erred in regard to the rights of the same; not only were the deeds explicit, but the plat of said lands, all of which were on record, plainly show that it was the railroad's property. This exception is overruled.

6. "Because his Honor erred in holding that the railroad, plaintiff-respondent, is not bound by the plat relied upon by the defendants-appellants; whereas, his Honor should have held that the plaintiff-respondent is bound by acquiescence

in the use of said street, known as Sumter avenue, by the town and general public."

We have virtually disposed of this exception already, but in the abundance of precaution, we again repeat, that the railway plaintiff was not bound by the plat referred to, and that there was no acquiescence by the railroad in the use of said street, known as Sumter avenue, by the town and general public.    This exception is overruled.

The judgment of this Court is, that the judgment of the Circuit Court is affirmed.